Submitted on record and briefs December 14, 1981,
affirmed March 8, 1982

STATE OF OREGON,
*Respondent,*

*v.*

VERNON ELI REECE,
*Appellant.*

(No. 10-81-02264, CA A21622)

641 P2d 1141

Gary D. Babcock, Public Defender, and Ernest E. Estes, Deputy Public Defender, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Robert E. Barton, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals from his conviction after jury trial for burglary. He assigns as error the following:

1) admitting oral testimony as to the contents of a letter allegedly written by defendant to a state's witness; and

2) imposing a sentence which directed that restitution be paid "on a schedule to be determined by defendant's parole officer."

The essential facts material to an understanding of the issues are as follows:

The case involved the entry of a private home and the theft of a quantity of valuable coins. The evidence offered by the state was largely circumstantial. One state's witness, Charles Vaughn, testified that he had been solicited by defendant to take part in a burglary to get silver and "get rich." Vaughn had also seen defendant after the burglary with three boxes of silver coins and a new pickup, although defendant had previously been without a car or a job. Another state's witness, Darrell Collins, a resident at Hillcrest, a state training school, testified that: sometime after the burglary he saw defendant with four to six hundred dollars in currency; defendant said he had stolen silver coins from someone else; and he was with defendant for several days, during which defendant paid for all meals, lodging, transportation and entertainment. Collins also testified that he had, immediately prior to trial, received a letter from defendant in which defendant mentioned pleading the Fifth Amendment and threatened Collins in the event that he did not get off on the charge. Collins claimed that he had thrown the letter away, although he knew that he would be appearing in the case.

After objections from defendant, Collins gave certain testimony (out of the jury's presence) about the letter. According to Collins, on the morning of the day before his appearance at trial, he received a two-page, handwritten letter which was hard to read, addressed to him and signed by defendant Collins said that defendant had said in the letter that he was not telling him what to do because that

would be tampering with a witness, but he suggested that Collins plead the Fifth. The letter, according to Collins, also contained a thinly veiled threat, suggesting that if the writer "got off," it "would be cool" but if not, he would see Collins sooner or later.

Collins said that he had thrown the letter in the garbage and it was probably gone. Collins explained that the trash from the rooms was emptied each morning into a larger plastic receptable before residents were allowed to go downstairs for a cigarette. Collins said that he had been taken from the facility on the night before trial, Tuesday, and did not know whether the garbage had been emptied.

A Hillcrest counselor, Elizabeth Barron, testified at trial the following morning, Thursday, April 30. She corroborated some of Collins' representations concerning the trash policy at Hillcrest, saying that the wastebaskets in each room were emptied every morning into a larger receptacle. This larger receptacle, according to Barron, was taken Wednesday morning, April 29, from the Collins cottage to the garbage room. This room is emptied on Monday, Tuesday, Thursday and Friday. Barron said that she looked at a wastebasket in Collins' room on the morning of April 30, prior to her court appearance. She also searched the larger receptacle into which Collins' wastebasket would have been dumped. She found nothing addressed to Darrel Collins. Although Barron did not know whether Collins' receptacles were emptied every day, it was part of the routine. Both Barron and Collins were allowed to testify regarding the search and the letter respectively.

Turning to defendant's first assignment, namely, that the court erred in admitting oral testimony as to the contents of the letter, defendant argues that the testimony was inadmissible, because (a) it was hearsay, (b) the letter was insufficiently authenticated and (c) oral testimony was not the best evidence.

We conclude that the trial court did not err in admitting the testimony of Collins concerning the contents of the letter. The contents of the letter were admissible although hearsay because they were statements by a party. ORS 41.900(2). *See also* Section 62, Rule 801(4)(b)(A),

Oregon Rules of Evidence, Or Laws 1981, ch 892; McCormick, Evidence, ch 26, § 262, pp 628-632 (2nd Ed 1972). There was substantial evidence from which the jury could have found that the letter had been sent by defendant to Collins. That satisfied the requirement of authentication. As to defendant's best evidence contention, ORS 41.640 provides "The original writing shall be produced and proved except as provided in ORS 161.640."

ORS 161.640 provides:

"* * * (1) There shall be no evidence of the contents of a writing, other than the writing itself, except:

"* * * * *

"(b) When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default."

Here the evidence shows that the original could not be produced by the state "with proper diligence, and its absence is not owing to [the state's] neglect or default." The objection on the basis of the best evidence rule was properly overruled. *See Stipe v. First Nat Bank,* 208 Or 251, 262, 301 P2d 175 (1956) (the "ultimate determination of the sufficiency of the search" is entirely within the discretion of the trial court).

■ Finally, defendant objects to the form of the restitution order in that it provided for payment of restitution pursuant to a monthly schedule and directed a parole officer to set a payment schedule for restitution.

ORS 144.275 provides:

"Whenever the State Board of Parole orders the release on parole of an inmate who has been sentenced to make restitution pursuant to ORS 137.106, but with respect to whom payment of all or a portion of the restitution was suspended until his release from imprisonment, the board shall establish a schedule by which payment of the restitution may be resumed. In fixing the schedule and supervising the paroled inmate's performance thereunder the board shall consider the factors specified in subsection (2) of ORS 137.106. The board shall provide to the sentencing court a copy of the schedule and any modifications thereof."

We construe the court's order as one simply suspending payment of restitution until defendant is paroled, at which time the Board shall set a payment schedule as provided by ORS 144.275.

We find no error.

Affirmed.