Argued and submitted December 21, 1995, affirmed May 1, petition for review denied July 16, 1996 (323 Or 690)

## STATE OF OREGON,
*Respondent,*

*v.*

## ANDREW BEVAN PARK,
*Appellant.*

(93-4664; CA A84979)

916 P2d 334

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janie M. Burcart, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals from convictions for manufacture and possession of a controlled substance. ORS 475.992. He argues that the trial court erred in admitting a letter into evidence that was purportedly written by him and in admitting expert testimony from a police officer. He also argues that the trial court erred when it denied his motions for judgments of acquittal. We affirm.

■ We review the evidence adduced at trial in the light most favorable to the state, because the jury found defendant guilty. *State v. Charboneau*, 323 Or 38, 40, 913 P2d 308 (1996). United States Forest Service officers found a marijuana growing operation in the Siuslaw National Forest in Lincoln County and set up surveillance equipment at the site. The equipment included a seismic sensor that triggered an alarm when someone walked into the growing area. There were also observation places for the officers. A few days later, two officers spotted a white Dodge pickup on a road near the growing area. They radioed that information to an officer at one of the observation places. Immediately thereafter, that officer heard movement coming from the garden that sounded like someone or something running, and the seismic sensor's alarm also went off. Although the officers found no one in the growing area when they investigated, they did see defendant later getting into the white pickup. Based on that information, officers searched defendant's residence pursuant to a search warrant and found stakes similar to ones used in the growing area to support the marijuana plants. The stakes at defendant's residence and those at the growing area had string tied around them with the same unique type of knot combination. Subsequently, defendant was indicted, and the matter went to trial, eventually leading to defendant's conviction.

Defendant's first assignment of error focuses on the admissibility of the letter into evidence. The letter was found by police during an unrelated search of another person's (Faber's) residence. The letter is dated April 26, postmarked April 27, 1991, is addressed to Faber and contains a somewhat illegible signature. It reads, in part:

"I have come across more cutlings than I can probably use. I may have some for sale as clones depending on several circumstances. For sale as opposed to gifts, to offset my considerable expenses. I'm talkin[g] $20 a piece.

"If that sounds high consider that each is worth $1,000 minimum at harvest. Counter offers considered. I'd appreciate you mentioning this to Geoff too. It's just a 'maybe' right now but it may come to pass around May 15 - June 1 that I have some extra clones. Let me know by May 5 if interested.

"* * * * *

"/s/ [signature]

"P.S. Burn this!"

A witness for the state testified that the term "clones" is commonly used by marijuana growers to refer to marijuana plants that are started from a mother plant instead of seeds. He also testified that the statement that the plants would be worth $1,000 at harvest indicated that the letter's writer was referring to marijuana plants.

Defendant argues that the letter constitutes inadmissible hearsay, because the state failed to demonstrate a sufficient foundation for its admissibility under OEC 801(4)(b)(A).[1] The contents of the letter were not hearsay and were admissible if they were statements made by defendant. *State v. Reece*, 56 Or App 169, 173, 641 P2d 1141 (1982). The proof of the authenticity of the letter as defendant's statements is governed by OEC 901:

"(1) The requirement of authentication or identification *as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.*

---

[1] OEC 801 (4) provides, in part:

"(4) A statement is not hearsay if:

"* * * * *

"(b) The statement is offered against a party and is:

"(A) That party's own statement, in either an individual or a representative capacity[.]"

"(2) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of subsection (1) of this section:

"(a) Testimony by a witness with knowledge that a matter is what it is claimed to be.

"(b) Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

"(c) Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated.

"(d) Appearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with circumstances." (Emphasis supplied.)

Kirkpatrick notes:

"Rule 901(1) provides only for a preliminary determination of authenticity by the court sufficient to allow the evidence to be received. The opponent may still offer counter-evidence contesting authenticity at trial, and the final determination of authenticity is made by the trier of fact after receipt of all evidence. *Authentication is thus a matter of conditional relevancy under Rule 104(2).*" Laird C. Kirkpatrick, *Oregon Evidence* 666 (2d ed 1989) (emphasis supplied).

■ As the emphasized language indicates, authentication is a question of conditional relevancy under OEC 104(2). Whether the letter was written by defendant is not a preliminary question of fact under OEC 104(1), contrary to the state's suggestion.[2] Consequently, our standard of review is whether there was sufficient evidence for the trial court to have submitted the issue of authorship of the letter to the jury. The legislative commentary to OEC 104 supports this approach:

---

[2] Both parties rely on *State v. Carlson*, 311 Or 201, 210, 808 P2d 1002 (1991), in their dispute over whether OEC 104(1) or 104(2) controls our standard of review. *Carlson* is inapposite; it involves admissions adopted by a party under OEC 801(4)(a)(B), and whether the party intends to adopt, agree or approve a statement of another. In contrast, the issue in this case presents a question of conditional relevancy.

"Subsection (2) recognizes that in some situations the relevance of an item of evidence depends upon the existence of a particular preliminary fact. * * * *If a letter purporting to be from Y is relied upon to establish an admission by Y, it has no probative value unless Y wrote or authorized it. * * *

"These are appropriate questions for juries. The accepted treatment, provided in the rule, is the treatment generally given to questions of fact. The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If, after all the evidence on the issue is in, the jury could not reasonably conclude that fulfillment of the condition is established, the judge withdraws the matter from the jury's consideration." OEC 104 Commentary (emphasis supplied).

■ In this case, the state produced evidence from handwriting experts that the contents of and signature in the letter had "similar features" to the handwriting specimens obtained from defendant. The state also offered into evidence at least one authenticated handwriting specimen from defendant for purposes of comparison. The signature on the letter and defendant's authenticated signature on the other document would permit a trier of fact to conclude that defendant's signature is on the letter. Moreover, the return address on the letter was a rental postal box rented by defendant on October 29, 1990.[3] Finally, one witness testified that, during the search of Faber's home, the police found photographs and home video footage of Faber and his wife with defendant at social gatherings. They also found defendant's name in Faber's address book and defendant's signature in Faber's wedding guest book. Because OEC 901 provides for the authentication of documents through handwriting comparisons by experts, as well as from the "contents, substance * * * or other distinctive characteristics [of the document]," we hold that the contents of the letter and the circumstances under which it was found were sufficient for the trial court to submit the issue of authorship of the letter to the jury.

[3] Defendant argues that there is no evidence that he was renting the box at the time the letter was written, and therefore, the return address does not support the assertion that he wrote the letter. However, there also is no evidence that the rental had terminated and, therefore, it is inferable that defendant was still using the post office address at the time the letter was written.

■ Nevertheless, defendant argues that the letter is not relevant[4] because it was mailed in April 1991 and the officer found the growing operation in October 1991. The state counters that the letter refers to plant starts that defendant would have had in May to June 1991, which would have been ready to harvest in September to October 1991. Thus, the state argues that the letter refers to plants that could have been part of the operation that the forest service found in October 1991. The trial court ruled:

> "[I]t's a clear offer to sell a part of a particular grow that was coming down in October. * * * [T]hat was this year's crop. He was offering to sell a part of its initial cull, or whatever you want to call it—clone to somebody else who, I assume, would take the $20 a piece clones and grow them.
>
> "And, certainly, that's relevant to whether he, in fact, did have a grow going that particular year in this county."

We agree with the trial court that the letter tends to make it more likely that it was defendant who was growing marijuana in the growing operation that the police found. OEC 401.

■ Finally, defendant argues that the probative value of the letter is outweighed by its prejudicial effect. OEC 403. He asserts that even if the letter is relevant, it should have been excluded from evidence because it contains evidence of prior bad acts, evidence that is inadmissible under OEC 404(3). Assuming without deciding the correctness of defendant's premise, not every form of prejudice requires exclusion under OEC 403. Exclusion is required only when the prejudice outweighs the probative value of the evidence. The factors to be evaluated include: (1) the need for the evidence; (2) the degree of certainty that the other bad acts were committed and that defendant was the actor; (3) the relative strength or weakness of the evidence; and (4) its potential for inflammatory effect on the jury. *State v. Johns*, 301 Or 535, 557-59, 725 P2d 312 (1986). Here, the need for the evidence was great because the state was required to prove that defendant was

---

[4] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

the grower of the marijuana that the Forest Service found. There was little potential of the letter having an improper inflammatory effect on the jury. The other factors are subject to competing inferences. Under the circumstances, we do not believe that the trial court abused its discretion in ruling that the probative value of the letter was not substantially out-' weighed by the danger of unfair prejudice.

■      Defendant next assigns error to the admission of a Forest Service officer's testimony regarding the kind of marijuana plants that he found in the garden. The officer said that the majority of the plants in the garden were "clones," that they were derived from the same mother plant. Defendant argues that the witness was not qualified to testify as an expert in that regard because he lacked a degree in botany. OEC 702. We review the court's ruling for abuse of discretion. *State v. Caulder*, 75 Or App 457, 460, 706 P2d 1007, *rev den* 300 Or 451 (1985).

■      OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

The evidence shows that the witness had completed 16 hours of training regarding the difference between clone starts and seed starts. Also, he had seen numerous growing operations, of which approximately one half were "clone" starts, and he testified that, in the past, he had been 85 to 90 percent accurate in identifying "clone" starts. Based on that foundation, the trial court did not abuse its discretion in allowing the officer to testify about his opinion.

Defendant's other arguments do not warrant discussion.

Affirmed.