Argued and submitted November 25, 1996, affirmed on appeal and cross-appeal
April 22, appellant's petition for reconsideration filed May 6 allowed
by opinion July 15, 1998
See 155 Or App 1, _____ P2d _____ (1998)

Marlene PURCELL,
Personal Representative of the Estate of
John Purcell, Deceased,
*Respondent - Cross-Appellant,*

*v.*

ASBESTOS CORPORATION; LTD.,
a Canadian corporation;
Armstrong World Industries, Inc.,
a Pennsylvania corporation, in its individual capacity
and as successor-in-interest to
Armstrong Cork Company, Inc.,
a Delaware corporation; A. P. Green Refractories Co.,
individually and as successor-in-interest to
E. J. Bartells, a Delaware corporation;
Fibreboard Corporation, a Delaware corporation;
GAF Corporation, a Delaware corporation;
United States Gypsum Company,
a Delaware corporation, individually and
as successor-in-interest to
A. P. Green and E. J. Bartells;
National Gypsum Company, a California corporation;
Turner & Newall PLC, a British corporation
and its subsidiary J. W. Roberts Limited;
Union Carbide Chemicals and Plastics Company, Inc.,
a New York corporation, successor-in-interest to
Union Carbide corporation; Flexitallic, Inc.,
a Delaware corporation;
United Pipe & Supply Co., Inc.,
an Oregon corporation; Paramount Supply Co.,
an Oregon corporation; Mar-Dustrial Sales, Inc.,
an Oregon corporation; Quimby Welding Supplies, Inc.,
an Oregon corporation; ACandS, Inc.; and
Pittsburg-Corning Corporation,
*Defendants,*

*and*

OWENS-CORNING FIBERGLAS CORPORATION,
a Delaware Corporation and E. J. Bartells Company,
a Washington corporation,
*Appellants - Cross-Respondents,*

*and*

DEPARTMENT OF JUSTICE,
State of Oregon,
*Cross-Respondent.*

(9311-07674; CA A85339)

959 P2d 89

Robert K. Udziela argued the cause and filed the briefs for respondent - cross-appellant. With him on the brief were Kimberly Chaput and Pozzi Wilson Atchison.

Thomas G. Hungar argued the cause for appellant - cross-respondent Owens-Corning Fiberglas Corporation. With him on the brief were Gibson, Dunn & Crutcher, and Jay W. Beattie and Lindsay, Hart, Neil & Weigler.

Katherine H. O'Neil argued the cause and filed the briefs for appellant - cross-respondent E. J. Bartells Company. With her on the brief was Graff & O'Neil.

Robert B. Rocklin, Assistant Attorney General, waived appearance for cross-respondent Department of Justice, State of Oregon.

Before Deits, Chief Judge,* and Riggs** and Landau, Judges.

DEITS, C. J.

---

* Deits, C. J., *vice* Richardson.

** Riggs, J., *vice* Leeson, resigned.

## DEITS, C. J.

Defendants Owens-Corning Fiberglas Corporation (Owens) and E. J. Bartells Company (Bartells) appeal and plaintiff cross-appeals from the judgment for plaintiff in this negligence and products liability action arising from an asbestos-related disease that plaintiff suffered as a result of exposure to products manufactured by defendants.[1] We affirm on the appeal and on the cross-appeal.

Plaintiff developed mesothelioma, a cancer of the lining of the lungs, as a result of inhaling airborne asbestos fibers. He was exposed to the asbestos during his 35-year employment with several employers at numerous job sites. During many of plaintiff's working years, asbestos was used commonly in fire-resistant products such as insulation products and wall board. According to expert testimony, inhaled asbestos fibers may lie dormant in the lungs and pleura for 10 to 60 years before developing into cancer. One asbestos-related disease expert testified that even one exposure to airborne asbestos fibers can cause mesothelioma.

Plaintiff's occupational exposure to airborne asbestos fibers began in 1955 at Jantzen Knitting Mills, where he worked as an apprentice machinist. As an apprentice, plaintiff was exposed to airborne asbestos fibers as he observed other workers apply formed half-rounds of insulation and powder, mixed with water to create asbestos "mud" or cement, which sealed the insulation around steam lines. Plaintiff also worked as an electrician for Allied Electric for about two years beginning in 1959, and for Bohm Electric from 1961 to 1973. Plaintiff was employed as an electrician by the Portland School District (school district) in 1973-74 and 1984-93. While working as an electrician, plaintiff was exposed to airborne asbestos fibers from multiple sources, including asbestos-containing sheet cement boards and dust from deteriorating heat and hot water pipe insulation at

---

[1] In the balance of this opinion, we will refer to the defendants "Owens" and "Bartells" individually and refer to them as "defendants" collectively.

Plaintiff, John Purcell, died during the course of this litigation, and his surviving spouse has been substituted as a party. We nevertheless will refer to John Purcell as "plaintiff."

more than 100 sites. Those sites included schools, paper mills, shopping centers, jails, hotels, and manufacturing plants. Plaintiff stopped working in 1993, when he was diagnosed with mesothelioma.

During his many years of employment, plaintiff was exposed to several types of asbestos products. Bartells distributed two asbestos-containing product lines, Eagle-Picher cement and Johns-Manville cements and insulation. The Johns-Manville products were distributed from 1955 to 1972 and included Thermobestos and 85 percent Magnesium, which was a cement of 85 percent magnesium and 15 percent asbestos. From 1958 to 1972, Owens and Owens-Illinois, a subsidiary, manufactured and sold Kaylo, which was a calcium-silicate based product that was combined with asbestos. Kaylo was sold in formed blocks as an insulating material to be placed around steam pipes and hot water heaters. Kaylo cement, a loose material containing up to 100 percent asbestos, was mixed with water and applied in the joints and between blocks to secure and seal the insulation.

Plaintiff brought this action in November 1993, against Owens, Bartells and 16 other defendants, alleging strict products liability and negligence and seeking compensatory and punitive damages for personal injuries resulting from exposure to asbestos-containing materials. Plaintiff alleged, in relevant part:

"E. J. Bartells Company * * * was engaged in the manufacture, distribution and sale of asbestos-containing refractory, building and insulation materials.

"* * * * *

"Owens-Corning Fiberglas was * * * engaged in the manufacture, sale and distribution of asbestos-containing insulation and building materials.

"* * * * *

"Defendants' asbestos products were unreasonably dangerous and defective in that:

"1.   Defendants did not provide sufficient or adequate warnings and/or instructions of the harm that could be caused by exposure to defendants' asbestos-containing products;

"2. The asbestos-containing products of the defendants caused pulmonary disease and/or cancer if inhaled by individuals in their work place.

"3. Individual workmen were not advised to utilize proper respiratory protection and were exposed to air-borne asbestos fibers within their working environment."

The case proceeded to trial against 12 defendants, nine of which settled and one of which received a directed verdict in its favor. Bartells and Owens remained as defendants. The jury awarded plaintiff $307,000 in economic damages and $1.5 million in noneconomic damages against both defendants. It also awarded plaintiff $3 million in punitive damages against Owens. Pursuant to ORS 18.455 (1993), the court reduced the amount of the verdict against those defendants by the amount of the settlements between plaintiff and the other defendants.

Defendants first assign error to the denial of their motions for a directed verdict.[2] Owens asserts that plaintiff's proof was insufficient to establish "medical causation" under the proper legal standard. Additionally, both defendants contend that, even assuming that plaintiff's evidence was sufficient in that regard, he nevertheless failed to offer adequate proof of his exposure to their asbestos-containing products, as distinct from products of other manufacturers, to permit the inference that their products caused his disease.

■   We review the denial of a motion for a directed verdict by considering the evidence, including the inferences, in the light most favorable to plaintiff, the nonmoving party. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). The verdict cannot be set aside "unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's cause of action." *Id.*; Or Const, Art VII (Amended), § 3.

---

[2] Plaintiff contends, on various grounds, that defendants did not adequately preserve those assignments of error or their arguments under them. We have considered plaintiff's arguments and conclude without discussion that defendants have adequately preserved their assignments and arguments.

We turn first to the medical causation issue. Plaintiff's expert, Dr. Andrew Churg, is a pathologist who specializes in the diagnosis of mesothelioma. He testified that plaintiff's exposure to airborne asbestos fibers caused the disease. According to Churg, inhaled asbestos fibers have a latency period of from 10 to 60 years, and at least 15 years generally will elapse between the victim's initial exposure and the onset of mesothelioma. Additionally, Churg testified that a single exposure to asbestos fibers can cause mesothelioma, with each subsequent exposure exponentially increasing the risk of the disease. Thus, Churg concluded that all of plaintiff's exposure to asbestos fibers over the years "contributed to some degree" to his mesothelioma.

As noted above, Owens contends that plaintiff's evidence was insufficient to establish causation. According to Owens, plaintiff was required and failed to show that exposure to its products, in itself, caused plaintiff's mesothelioma or that plaintiff would not have suffered the disease in the absence of exposure to Owens' products. Owens reasons that, because plaintiff did not prove that his mesothelioma was not caused by exposure to the products of other asbestos manufacturers, the fact that plaintiff may have been exposed to an Owens' product is legally insufficient to support a finding of causation or liability against it. For the same reason, Owens also argues that Churg's testimony did not establish that exposure to Owens' products *could* have been the medical cause of the disease: It asserts that plaintiff's evidence did not show that those exposures were a "substantial factor" in causing the disease.

■    The Oregon Supreme Court articulated the "substantial factor" test as the standard for proving causation and for assessing the "respective liability of multiple defendants" in *McEwen v. Ortho Pharmaceutical*, 270 Or 375, 528 P2d 522 (1974). The plaintiff there ingested birth control pills manufactured by two defendants, neither of which contained warnings about possible side effects that left her blind in one eye. The plaintiff brought a products liability action against both manufacturers for failing to provide adequate warnings. The court stated that the

"respective liability of multiple defendants depends upon whether the negligence of each was a substantial factor in producing the complained of harm. If both [defendants] were negligent and *their negligence combined to produce plaintiff's injuries*, then the negligence of [one] was concurrent with that of [the other] and does not insulate [the other] from liability. This is true although the negligent omissions of each defendant occurred at different times and without concerted action. *Nor is it essential to * * * liability that its negligence be sufficient to bring about plaintiff's harm by itself; it is enough that the [defendant] substantially contributed to the injuries eventually suffered by [the plaintiff].*" *Id.* at 418. (Citations omitted; emphasis supplied.)

The trial court properly applied that causation standard here. Owens, Bartells and possibly others manufactured or distributed the asbestos in this case. Plaintiff's expert testified that any minute exposure to airborne asbestos fibers could cause mesothelioma and that, once plaintiff had been exposed, any subsequent exposures exponentially increased the likelihood of contracting the disease. Examining the evidence in the light most favorable to plaintiff, he was exposed at different times over the course of many years to the asbestos products of various manufacturers. Those exposures *combined* to create an increased risk of mesothelioma. Thus, if plaintiff was exposed to defendants' products, the jury could find that defendants substantially contributed to plaintiff's disease, thereby meeting the causation requirement.

Defendants assert that we should apply a more stringent variation of the substantial factor test to establish causation in asbestos cases, such as the "frequency, regularity, and proximity" test used in some other jurisdictions. Under that test, a plaintiff must show that he or she worked in proximity, on a regular basis, to asbestos products manufactured by a particular defendant. *See, e.g., Tragarz v. Keene Corp.*, 980 F2d 411, 420 (7th Cir 1992); *Lohrmann v. Pittsburgh Corning Corp.*, 782 F2d 1156, 1162-63 (4th Cir 1986). However, even the jurisdictions that follow the "frequency, regularity, and proximity" test apply it less rigidly when dealing with mesothelioma, because it can be caused by very minor exposures. *Tragarz*, 980 F2d at 421; *Thacker v. UNR*

*Industries, Inc.*, 151 Ill 2d 343, 603 NE2d 449, 460 (1992). As the court said in *Wehmeier v. UNR Industries, Inc.*, 213 Ill App 3d 6, 572 NE2d 320, 337 (1991):

> "Where there is competent evidence that one or a *de minimus* number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial factor in causing a plaintiff's injury."

In *Ingram v. ACandS, Inc.*, 977 F2d 1332, 1343-44 (9th Cir 1992), the Ninth Circuit rejected the "frequency, regularity, or proximity" test as the standard of causation under Oregon law. In that case, a former insulator and machinist who contracted asbestosis sued several asbestos manufacturers and received favorable verdicts. The defendants appealed, contending that there was insufficient evidence of causation to support the verdict because the insulator worked for only a short time with the defendants' products and evidence showing the machinist's exposure was described as "somewhat scant." The court concluded in *Ingram*:

> "The more stringent test suggested by [the defendant] has no place in a jurisdiction such as Oregon which looks only to cause-in-fact * * *. Under Oregon law, once asbestos was present in the workplace, it is the jury's task to determine if the presence of that asbestos played a role in the occurrence of the plaintiff's injuries." *Id.*

We agree with that understanding of Oregon law.

Defendants also argue that the Oregon Supreme Court's causation analysis in *Senn v. Merrell-Dow Pharmaceuticals*, 305 Or 256, 751 P2d 215 (1988), is applicable here. In that case, the plaintiff could not establish which of two defendant drug manufacturers supplied the vaccine that caused her injuries. Answering certified questions, the court concluded that it would not apply a theory of alternative liability where "neither defendant is able to produce exculpatory evidence," because such a theory would impose liability when the "probability of causation is 50 percent or less" under the plaintiff's evidence. *Id.* at 269. Defendants argue here that holding them liable in this case would do exactly that—impose liability when it is "less probable than not" that either party was responsible for plaintiff's mesothelioma.

Defendants' reliance on *Senn* is misplaced. There, only one defendant could have caused the plaintiff's harm because she used only one product. In this case, as in *McEwen*, multiple exposures to the products of more than one defendant could have combined to cause plaintiff's injury. We conclude that, in these circumstances, the proper inquiry under *McEwen* is whether defendants substantially contributed to plaintiff's injuries. 270 Or at 418. In view of the medical evidence that a single exposure could have caused plaintiff's disease and that all exposures contributed to the likelihood of his contracting mesothelioma, a reasonable jury could find that the exposure to either or both of defendants' products was a substantial factor in causing plaintiff's disease.

Defendants further contend, however, that plaintiff failed to provide sufficient evidence to link their products to the work sites at which he sought to show that he was exposed to airborne asbestos fibers. Plaintiff worked at many sites, and his evidence was directed at showing that one or both of the defendants' products were located at various sites at the times that plaintiff worked there. The trial court held that plaintiff's proof was sufficient to go to the jury with respect to the Portland International Airport, various locations operated by the Portland School District, the Clackamas County Jail, the Cosmopolitan Motor Hotel, Mt. Hood Community College and Lloyd Center. We agree with the trial court in each instance.[3] Although the parties make detailed site-by-site arguments about the proof of plaintiff's exposures to defendants' products, it is unnecessary for us to engage in similar detail in our discussion, given the legal standard that we have held applies to the question. Plaintiff's evidence sufficed to allow the jury to infer that he was exposed to asbestos-containing products of both defendants, singly or in combination, at each of the work locations that the trial court allowed the jury to consider and that the exposures began in 1959 and continued until at least the 1980s. The exposures at some of the sites were recurrent. The number of discrete sites at which plaintiff's evidence showed that

---

[3] The trial court also concluded that the evidence was insufficient to go to the jury with respect to a number of other work sites.

he was exposed to defendants' products in his work for the school district alone exceeded 100.

Defendants make extensive and detailed arguments challenging the adequacy of plaintiff's evidence that he was exposed to the products of either or both of them at various places where he worked. However, defendants' arguments fail to demonstrate that the proof was insufficient but amount instead to attacks on the weight of the evidence. Those arguments should have been and probably were addressed to the jury. However, our review is limited to whether the evidence was adequate to allow the jury to find what it did. We conclude that it was.

■ Owens also makes a specific contention that certain evidence regarding exposures at a particular work location— Benson High School—was improperly admitted and should have been stricken. This contention requires separate discussion because, if it is correct, the jury's finding could have been based on inadmissible evidence, even though there was ample other evidence to support the finding. William Barnes, a retired Owens asbestos worker, testified on direct examination that he did not apply insulation at Benson but had surveyed the school and identified Kaylo as the brand of asbestos previously installed. On cross-examination by Owens' attorney, Barnes stated that a friend who installed pipe covering at Benson told him that Kaylo was used. Owens objected and moved to strike Barnes' product identification as hearsay.

Plaintiff's counsel then inquired further about the basis for Barnes' product identification, to which Barnes responded that Kaylo "had a harder finish and is more brittle" than the magnesium product and thus, after examining the product himself, he believed that it was Kaylo. The court gave a curative instruction to the jury, directing it to disregard Barnes' testimony about what his colleague told him, but allowing the jury to consider Barnes' firsthand knowledge.

Owens frames its assignment of error as challenging the court's denial of his motion to strike the testimony. Plaintiff responds that, if there was error, it was invited, because Owens itself elicited the testimony. *See James v. General*

*Motors of Canada, Ltd.*, 101 Or App 138, 146 n 4, 790 P2d 8, *rev den* 310 Or 243 (1990). Be that as it may, and assuming that the motion in the trial court and the assignment here are sufficient to preserve and raise the issue,[4] we conclude that the curative instruction that the court gave adequately diffused any likelihood that the the jury improperly considered the hearsay testimony. Indeed, the instruction effectively gave Owens exactly what it now contends it should have received—the striking of the hearsay evidence. We hold that the trial court correctly denied defendants' motions for a directed verdict.

■ In the next three assignments of error, both defendants contend for various reasons that the trial court erred in admitting evidence and in refusing to give certain instructions that defendants requested.[5] The common thread of the assignments is that, because defendants installed some of the asbestos-containing materials that they sold, manufactured, or distributed, they were insulated from liability by

---

[4] Owens made no motion for a mistrial before or after the curative instruction was given.

[5] The pertinent portions of the requested instructions were:

No. 44:

"You may not find against defendant[s] * * * with respect to plaintiff's strict liability claims simply by finding that it installed asbestos-containing products at one or more places where the plaintiff worked and that exposure to those products may have contributed to the plaintiff's injury. To find for the plaintiff against defendant[s], * * * you must find instead that [they] sold asbestos-containing products that were present at one or more places where the plaintiff worked and that exposure to those products more likely than not was a substantial factor in causing the plaintiff's injury."

No. 52:

"Defendants * * * contend that plaintiff filed his action against them too late with respect to any activities * * * as a contractor or subcontractor * * *."

No. 55:

"In order to establish that they were contractors or subcontractors, E. J. Bartells Co. and Owens-Corning Fiberglas Corp. have the burden of proving each of the following elements by a preponderance of the evidence:

"First, that each acted as a contractor or subcontractor;

"Second, that each constructed, altered or repaired any improvement to real property; and

"Third, that the plaintiff did not bring his action against either E. J. Bartell Co. or Owens-Corning Fiberglas Corp., with respect to their construction activities, within ten years from the substantial completion of the contract work performed by them."

the ten-year statute of ultimate repose contained in ORS 12.135(1). That statute provides, as material:

> "An action against a person, whether in contract, tort or otherwise, arising from such person having performed the *construction, alteration or repair* of any improvement to real property or the supervision or inspection thereof, * * * shall be commenced within 10 years from substantial completion or abandonment of such construction, alteration, or repair of the improvement to real property." (Emphasis supplied.)

There are a number of problems with defendants' argument. For the reasons that we will discuss, ORS 12.135(1) is not the applicable statute here. Rather, the governing statute is ORS 30.907, which is an exception to the eight-year statute of repose for product liability actions and the ten-year statute of repose for negligence actions. It provides:

> "A product liability civil action for damages resulting from asbestos-related disease shall be commenced not later than two years after * * * the plaintiff first discovered, or in the exercise of reasonable care should have discovered, the disease and the cause thereof."

Before discussing the applicability of ORS 12.135(1) to this case, we note a number of points by way of prologue. First, there is no contention that ORS 12.135 contains the applicable limitation period for defendants' manufacturing, distribution or sales activities, as distinct from their installation work involving asbestos-containing products. Second, although both defendants pleaded as affirmative defenses that the action was barred in its entirety by the applicable statute of limitation and/or ultimate repose, neither defendant now contends that the action itself, as a whole or any part of it, is *barred*. Rather, both argue that the effect of ORS 12.135 is to limit the types of conduct and the times that conduct occurred that the jury could consider in making its liability finding. Third, plaintiff alleged that defendants' liability and his damages flowed from defendants' conduct in the manufacture, distribution and sale of asbestos products, not installation or other activities to which ORS 12.135 applies.

The thrust of defendants' arguments under these assignments is that the jury should not have heard evidence concerning, and should have been instructed that it could not consider evidence of, their installation activities or of plaintiff's asbestos exposures that resulted from any such activities conducted more than ten years before this action was brought.[6]

Defendants' thesis as to the applicability of ORS 12.135 is that they acted in a dual capacity, both as the distributor or seller of the products and as the installer, and that ORS 12.135 is the applicable limitation statute with respect to their activities that included installation. They rely on *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F3d 1255 (9th Cir 1993), *cert den* 512 US 1236 (1994).[7] The plaintiff school district there brought an action against several asbestos installers and/or manufacturers to recover the costs of removing asbestos from more than 100 schools. The defendants argued in that case that ORS 12.135(1) barred the action because their work installing asbestos constituted improvements to the school buildings and the action was brought beyond the 10-year period of the statute. The court held that two defendants, ACandS and Bartells, were entitled to summary judgment on the basis of ORS 12.135(1). The court reasoned that, because the only asbestos products that "ACandS and Bartells ever supplied to the [s]chool [d]istrict was asbestos they installed in school buildings pursuant to their installation contracts," the statute of repose applied to them. *Id.* at 1259. However, the court did not extend that reasoning to other defendants in *School District* who manufactured asbestos that was installed in the buildings by entities other than themselves.

We question the analysis in *School District*. The Ninth Circuit failed to differentiate between installing asbestos pursuant to a contract and distributing asbestos through

---

[6] We assume for purposes of discussion that what amounts to a statute of limitations issue can be raised properly through the evidentiary and instruction questions that defendants present. We also assume, for the same purposes, that installation activities of the kind in which defendants engaged, if not conjoined with manufacture, installation and sales activities, would be subject to the repose period of ORS 12.135.

[7] No decision by the Oregon courts is dispositive.

the same activity. It essentially held that ORS 12.135 applied because part of what ACandS and Bartells did came within the parameters of that statute, although the simultaneously performed other part did not. However, whether or not the Ninth Circuit's interpretation of Oregon law was correct, as far as it went, its reasoning does not reach and cannot be logically extended to the situation in this case. There was no issue in *School District* regarding ORS 30.907 (or, for that matter, any limitation statute other than ORS 12.135 that might apply to the defendants' conduct). Here, conversely, it is clear that ORS 30.907 specifically applies to the products liability aspect of plaintiff's claims, *i.e.*, defendants' manufacture, distribution and sale of asbestos products, and it also applies specifically to the harm that plaintiff sustained.

Whatever the analytical merits and defects of *School District* might be, the more pertinent case is *State Farm v. W. R. Grace & Co.-Conn*, 24 F3d 955 (7th Cir 1994), *cert den* 513 US 919 (1994). There, the defendant asbestos manufacturer argued that the plaintiff's action to recover the costs of removing asbestos from its building was barred by an Illinois statute of ultimate repose. That provision barred actions "brought against any person for any act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property[,] after ten years have elapsed from the time of such act or omission." *Id*. at 956. The court rejected the defendant's argument that, because it supplied the asbestos materials that were installed, it was a designer or builder under the statute. The court further stated that, even if the defendant could be considered a builder under the statute of repose, the statute still was not applicable because the defendant's

"negligence had nothing to do with the installation or application of the Mono-Kote. So far as it appears, the directions for the installation of the product were perfectly adequate and it could not have been installed better. The problem was in the design of the Mono-Kote (to include asbestos), the failure to test the product, and the failure to warn about it. These negligent acts or omissions, being remote from building construction were not the sort of activities that the

statute was intended to shield from late-filed products liability suits[.]" *Id.* at 957.

We agree with the reasoning in *State Farm*. As in that case, the harm that befell plaintiff here was of the precise kind to which ORS 30.907 relates and, according to the pleadings and the proof, it was caused by precisely the product dissemination activities to which that statute applies. The fact that defendants may *also* have acted as the installers of some of the products that they made or sold does not make ORS 12.135 applicable to plaintiff's claims against them, because the claims are based on their manufacturing, distribution and sales of the products. *See also Newell v. Weston*, 150 Or App 562, 574, 946 P2d 691 (1997) (ORS 12.135 inapplicable where claims arose from unrelated post-installation events rather than installation itself). Accordingly, we reject defendants' assignments based on ORS 12.135.

■     Bartells argues next that the trial court erred by refusing to give two requested instructions, to the effect that plaintiff's damages would not be taxable and that any damages for lost earnings should be limited to plaintiff's "net, after tax income." We rejected a similar argument in *Audas v. Montgomery Ward, Inc.*, 79 Or App 718, 721, 719 P2d 1334 (1986). Bartells argues that the subsequent enactment of ORS 18.560(2)(a) requires a different result here. That statute defines economic damages as those which are "objectively verifiable." Under Bartells' rationale, because taxes are objectively verifiable—calculable and capable of prediction with some accuracy—the requested instructions regarding tax consequences must be given to comply with the statute. We do not agree that the new statutory provision changes the existing law that the tax effects of their awards are not to be considered by juries—if by anyone.

■     Both defendants contend that, under ORS 18.560(1), the trial court was required to reduce plaintiff's award for noneconomic damages to $500,000. However, we have held that in cases like this, involving claims cognizable at common law, the $500,000 "cap" imposed by ORS 18.560 is unconstitutional. *Lakin v. Senco Products, Inc.*, 144 Or App 52, 78-79, 925 P2d 107 (1996), *rev allowed* 325 Or 438 (1997).

The remaining assignments are Owens' alone. It argues first that the trial court erred by admitting a number of exhibits referred to as the "Saranac Lake" documents, which were generated in connection with studies by Saranac Laboratory during the 1950s. Saranac Laboratory specialized in research concerning lung diseases caused by breathing dust particles. Among the Saranac studies was one specifically involving Kaylo, which involved exposing laboratory animals to asbestos containing Kaylo dust and examining its effect on the lungs. The Saranac Lake documents consisted of correspondence between Owens-Illinois officials and Saranac doctors, various summaries, and a 1955 final report of that study.[8]

■ Owens contends that the Saranac Lake documents were admitted erroneously because plaintiff failed to meet his burden of demonstrating conditional relevancy under OEC 104(2):

> "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

Under OEC 104(2), a proper foundation must be laid through preliminary proof of a condition to establish the relevance of the evidence. *State v. Presley*, 108 Or App 149, 152, 814 P2d 550 (1991). "[O]ur standard of review is whether there was sufficient evidence for the trial court to have submitted the issue * * * to the jury." *State v. Park*, 140 Or App 507, 511, 916 P2d 334, *rev den* 323 Or 690 (1996). Owens argues that plaintiff did not provide sufficient preliminary evidence that any Owens official actually received and read the documents in order to prove that Owens had notice of the dangers of asbestos in Kaylo.

After reviewing the evidence in the record, we conclude that plaintiff laid an adequate foundation for admission of the Saranac Lake documents. Plaintiff presented testimony that Owens-Illinois ordered the Saranac study of

---

[8] At roughly the same time several published articles appeared linking asbestos exposure to lung disease and, a short time later, asbestos was identified as a carcinogen.

Kaylo and that Owens was working closely with Owens-Illinois on the Kaylo product and its distribution from 1953 until Owens' ultimate purchase of the Kaylo Division in 1958. Dr. Scheppers, director of the Saranac Laboratory from 1954 to 1957, stated that he wrote a letter in 1956 to Dr. Birch, Owens' director of personnel in industrial relations, and informed him of the dangers that asbestos in Kaylo posed. He testified that he suggested to Birch that the asbestos be removed. Scheppers also stated that he met with 22 Owens officials in 1956 to discuss asbestosis and how inhalation of asbestos fibers could cause cancer or asbestosis. Willis Hazard, a former Owens-Illinois industrial hygienist, testified that he transported his files on asbestos information and the Saranac reports and studies to Owens after its purchase of Owens-Illinois in 1958. That information provided a sufficient evidentiary foundation to permit the inference of Owens' knowledge of the documents and their contents. Consequently, we conclude that the trial court did not err in admitting the Saranac Lake documents under OEC 104(2).

Owens also argues that the documents were admitted improperly because they were unduly prejudicial under OEC 403. Plaintiff contends that any objection under OEC 403 is not preserved because, although Owens raised the OEC 403 argument in a pretrial written motion, Owens never expressly raised the OEC 403 argument during the pretrial hearing and did not object on that ground when the documents were offered at trial. We have stated that "[a]rguments that are discussed at a pretrial hearing and ruled on by the court are sufficiently preserved for appeal." *State v. Kitzman*, 129 Or App 520, 527, 879 P2d 1326 (1994), *rev'd on other grounds* 323 Or 589, 920 P2d 134 (1996) (citing *State v. Engweiler*, 118 Or App 132, 135, 846 P2d 1163, *rev den* 317 Or 486 (1993)). However, we will not consider objections to evidence not argued before the trial court. *Engweiler*, 118 Or App at 135. In *Kitzman*, the defendant moved to exclude evidence of prior consistent statements before the pretrial hearing but did not present an argument about that issue during the hearing itself. Furthermore, the defendant did not seek a ruling or object to the testimony on those grounds at trial. We concluded that the issue was not preserved for appeal. *Id.* at 527-28.

■　Owens did not raise its OEC 403 argument at the pretrial hearing, other than through a broad renewal of its written motion. Owens did not seek a ruling by the trial court under OEC 403 specifically, either during the pretrial hearing or when the evidence was introduced at trial, nor did the trial court make such a ruling.[9] Here, as in *Kitzman*, we conclude that Owens did not adequately pursue its OEC 403 argument, and thus it is not properly preserved. Lastly, we decline Owens' invitation to review this as an error apparent on the face of the record. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991); ORAP 5.45.

■■　Owens' other assignments challenge the award of punitive damages against it. Owens moved against the claim for an award of punitive damages through various motions before, at and after trial. Owens' arguments are directed against the propriety of *any* award, as well as the amount of the award,[10] and are based on a variety of themes, with underpinnings ranging from the sufficiency of the evidence to support the award to its permissibility under statutory and constitutional standards. In our view, none of Owens' arguments demonstrates error in the $3 million punitive damages awarded against it. The compensatory damages in this case were $1.8 million, and there was evidence—to choose one example—that Owens continued its production and marketing of asbestos materials for approximately 20 years after it was actually aware of the serious risk that asbestos posed. We find no error in the punitive damages award.

---

[9] Owens also assigns error to the trial court's failure to address the OEC 403 argument, citing *Lutz v. State of Oregon*, 130 Or App 278, 283, 881 P2d 171 (1994). We stated in *Lutz* that "when making a ruling under 403, a trial court errs if it fails to exercise discretion, refuses to exercise discretion, or makes an inadequate record that reflects an exercise of discretion." Because we have determined that Owens did not preserve its OEC 403 argument, it was not error for the court not to address the issue.

Although we do not reach the merits of Owens' argument, we call attention to our observation in *Persad v. Kaiser Foundation Hospital, Inc.*, 106 Or App 615, 619, 809 P2d 706, *rev den* 312 Or 80 (1991), that "the kind of prejudice that OEC 403 contemplates" does not extend to "evidence that is 'prejudicial' only in the sense that it [is] highly probative" of pertinent facts in the case that it is offered to prove.

[10] Plaintiff contends that Owens' arguments relating to the amount of the award are unpreserved. We assume preservation for the purpose of this decision.

■    In his cross-appeal, plaintiff assigns error to the trial court's reduction of the damage award by the full amount of his $225,000 settlement with the Manville Personal Injury Settlement Trust (Manville). Manville acted on behalf of Johns-Manville, one of a number of defendants with which plaintiff settled before the conclusion of the trial. The Manville settlement agreement provided that the "liquidated value" of plaintiff's claim was $225,000. However, plaintiff was to receive an initial payment of only 12 percent of that value, or $27,000, and the amount of subsequent payments, if any, was made contingent on the final outcome of other litigation in which Manville was involved. There was no guarantee under the agreement that plaintiff would be paid any further amounts beyond the initial $27,000.

ORS 18.455 (1993) provided, in relevant part:

"(1)   When a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury * * *:

"(a)   It does not discharge any of the other tortfeasors from liability for the injury * * *; but *it reduces the claim against the others to the extent of any amount stipulated by the covenant, or in the amount of the consideration paid for it, whichever is the greater*; and

"(b)   It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." (Emphasis supplied.)

The trial court ruled that, under that statute, the entire $225,000 "liquidated value" was the "amount stipulated" and that "defendants are entitled to an offset for that amount."

Plaintiff contends that the trial court erred in so ruling and that it "should have offset only the amount [plaintiff] actually received."[11] Plaintiff relies on out-of-state cases that have applied different statutes in the way he contends ORS 18.455 (1993) should have been applied here. Like the trial court, we find no basis in the statute for applying it in that

---

[11] Plaintiff notes that he offered to assign his right to any actual payments to Owens and Bartells. However, in the absence of those defendants' consent to its doing otherwise, the trial court was required to make the offset required by ORS 18.455 (1993) as part of the judgment.

way—or any other except the way in which the trial court did apply it.

Plaintiff argues that that literal application of ORS 18.455 (1993) leads to an absurd result here. We disagree. The statute simply provided that the amount of a plaintiff's agreed settlement with some but not all of the defendants was to be offset from claims against the nonsettling defendants. There is nothing absurd about that. Any disparity between the amount plaintiff receives from his settlement with Manville and the amount by which the judgment was reduced is attributable to the terms of his agreement with Manville, not the statute. The trial court did not err.

Affirmed on appeal and on cross-appeal.