Argued and submitted October 6, reversed and remanded November 24, 2004, petition for review denied April 5, 2005 (338 Or 374)

Richard AUSTIN
and Colleen Austin,
*Appellants,*

*v.*

A.J. ZINDA COMPANY,
an Oregon corporation;
A.P. Green Services, Inc.,
a Michigan corporation, individually and as
successor-in-interest to Bigelow-Liptak Corporation;
Acands, Inc.,
a Delaware corporation,
formerly known as Armstrong Contracting & Supply Corp.,
a wholly owned subsidiary of Armstrong Cork Co.
(now known as Armstrong World Industries, Inc.);
Aqua-Chem, Inc.,
a Delaware corporation;
Asbestos Corporation Limited,
a Canadian corporation;
Atlas Turner, Inc.,
a Canadian corporation, formerly known as Atlas Asbestos;
Bell Asbestos Mines, Ltd.,
a Canadian corporation;
Bromley, Inc.,
an Oregon corporation;
Cascade Acoustics, Inc.,
an Oregon corporation;
C.H. Murphy/Clark-Ullman, Inc.,
an Oregon corporation, individually and as
successor-in-interest to C.H. Murphy, Inc.;
Congoleum Corporation,
a Delaware corporation;
Domco Products Texas, L.P.,
a Delaware corporation,
formerly known as Azrock Industries, Inc.,
individually and as successor-in-interest to
Domco U.S. Incorporated, Domco Inc. Floor Product (Texas)
and Uvalde Rock Asphalt Company;
Duro Dyne Corporation,
a New York corporation;

Fred Shearer & Sons,
an Oregon corporation;
Gatke Corporation,
an Illinois corporation, individually
and as successor-in-interest to
Asbestos Textile Company, Inc.; Gensco, Inc.,
an Oregon corporation;
Hamilton Materials, Inc.,
a California corporation;
Honeywell International, Inc.,
a Delaware corporation,
formerly known as AlliedSignal, Inc.,
and as Allied-Signal, Inc., individually
and as successor-in-interest to The Bendix Corporation,
Bendix Products Automotive Division,
Bendix Products Division, Bendix Aviation Corp.,
Bendix Home Systems, Allied Corporation,
Allied Chemical Corporation,
and General Chemical Corporation; I&M Distributing Corp.,
an Oregon corporation;
Johnson Acoustical & Supply Co.,
an Oregon corporation;
Kaiser Gypsum Company, Inc.,
a Washington corporation, individually
and as successor-in-interest
to Permanente Cement Company,
Henry J. Kaiser Company
and Pacific Coast Cement Company;
Kaiser Aluminum & Chemical Corporation,
a Delaware corporation, individually
and as successor-in-interest
to Kaiser Refractories, National Refractories & Minerals
Corporation, Hendy International Company,
Maxxam Holdings, Inc., Maxxam, Inc.,
and Mexico Refractories; L&W Supply Corporation,
a Delaware corporation, the assumed business name of
Rose City Building Materials;
L.H. Butcher Company,
a California corporation, individually
and as successor-in-interest
to Central Solvents and Chemical Company, Inc.,

Chemcentral Corporation Company, Inc.,
Hooker Chemical Corporation, Udylite Corporation,
Wibel, Inc., and Wilbur-Ellis Company;
Mason Supply Company,
an Oregon corporation;
MacArthur Company,
a Minnesota corporation, individually
and as successor-in-interest to Western Asbestos Co.;
McPherson Furnace and Equipment Company,
a Washington corporation;
Metalclad Insulation Corporation,
a California corporation, individually
and as successor-in-interest
to Northern California Insulations, Inc.,
Sweetser Enterprises, Pacific Asbestos & Supply
and Pacific Insulation Services, Inc.;
Metropolitan Life Insurance Company,
a New York corporation;
North American Refractory Company,
an Ohio corporation,
formerly known as NARCO Investors, Inc., individually
and as successor-in-interest
to Didier-Taylor Refractories Corporation;
Plant Insulation Company,
a California corporation,
formerly known as Asbestos Company of California
and Plant Asbestos Company;
Pumilite Building Products, Inc.,
an Oregon corporation;
Quigley Company, Inc.,
a New York corporation, formerly known as Quigley, Inc.;
Quimby Welding Supplies, Inc.,
an Oregon corporation;
Quintec Industries, Inc.,
a Delaware corporation, individually
and as successor-in-interest
to Western Fiberglass Supply Company
and Muldoon Insulation;
T&N PLC,
a British corporation, individually
and as successor-in-interest
to Atlas Asbestos Company, Ltd., Atlas Turner, Inc.,

Atlas-Turner Company, Ltd., Bell Asbestos Mines, Ltd.,
Cassiar Asbestos Company, Ltd.,
CertainTeed Products Corporation,
Continental Products Corp., Cork Manufacturing Company,
Flexitallic Gasket Company, Inc., Havelock Asbestos Mines
(Swaziland), Ltd., J.W. Roberts Limited, Keasbey &
Mattison Company, Keasbey & Mattison, Inc.,
Newalls Insulation Company Limited, Nuturn Corporation,
Shabani & Mashaba Mines (Pvt), Ltd.,
Turner & Newall Holdings (Pty), Ltd.,
Turner & Newall Industries, Inc., Turner & Newall, Ltd.,
Turner & Newall, PLC.,
Turner & Newall International, Ltd.,
Turner Asbestos Fibers, Ltd.,
Turner Brothers Asbestos Company Limited,
and Washington Chemical Company, Limited;
Underwriters Laboratories, Inc.,
a Delaware corporation,
formerly known as Underwriters' Laboratories, Inc.;
Union Carbide Corporation,
a New York corporation,
formerly known as Union Carbide
and Carbon Products, and as Union Carbide Chemicals
and Plastics Company, Inc., individually
and as successor-in-interest
to Linde Air Products Company;
United States Gypsum Company,
a Delaware corporation with its principal place of business
in Chicago, Illinois, individually and as successor-in-interest
to Sprayon Research Corp., Smith and Kanzler Co., Inc.,
and Durabond; United States Mineral Products Company,
a New Jersey corporation, individually
and as successor-in-interest
to Philip Carey, Smith and Kanzler Co., Inc.,
Smith and Kanzler Corporation, Sprayed Insulation, Inc.,
S.K. Insulroack Corporation, Sprayton Research
Corporation, Sprayon Insulation, Inc., Dalen Corporation,
Isolatek Corporation,
New Venture Corporation,
United States Mineral Wool Company,
New York Steam Company,
Columbia Mineral Wool Company,

Columbia Acoustics and Fireproofing Company,
Roof Membrane Service Corporation;
W.R. Grace & Co.—Conn.,
a Connecticut corporation, individually
and as successor-in-interest
to W.R. Grace & Co., Handy Dan Home Improvement
Centers, Inc., S & B Supply Co., Aeroline, Inc.,
Angels Home Improvement Center, Inc.,
Sandy K Co. Pomona,
Daylin, Inc., Bonanza, and Thrift Builder Supply;
Western Asbestos Co., a California corporation;
Western MacArthur Company,
a California corporation, individually
and as successor-in-interest
to Western Asbestos Co., MacArthur Company, and
Bay Cities Asbestos Company,
*Defendants,*
*and*

ALBINA FUEL CO.,
an Oregon corporation,
*Respondent.*

0105-04970; A120273

101 P3d 819

Lloyd Leroy argued the cause for appellants. On the briefs were Elaine J. Brown, Robyn L. Stein, Jon M. Egan, Gil Purcell, and Brayton Purcell.

Thomas C. Patton argued the cause for respondent. With him on the brief were Bruce M. White and Mitchell, Lang & Smith.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs appeal, challenging the allowance of summary judgment in favor of defendant Albina Fuel Company (Albina) on claims arising out of plaintiff Richard Austin's alleged exposure to asbestos-containing products that Albina distributed. Plaintiffs argue that the trial court erred because the summary judgment record presents genuine issues of material fact as to whether Austin was, in fact, injuriously exposed to asbestos tape, flex connectors, or gaskets and rope packing in furnaces that Albina sold or distributed to Austin's former employer. We agree with plaintiffs that they presented sufficient evidence to permit a reasonable trier of fact to find that Austin was exposed during his employment to asbestos fibers from flex connectors supplied by Albina. Accordingly, we reverse and remand.

■     Summary judgment is proper if the "pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact." ORCP 47 C. "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* In reviewing the allowance of summary judgment here, we draw all reasonable inferences in favor of plaintiffs, who were the nonmoving parties. *Bachmeier v. Tuttle*, 195 Or App 83, 85, 96 P3d 871 (2004).

So viewed, the record discloses the following material facts: Austin worked as a sheet metal mechanic for Somerset Plumbing and Heating (Somerset) from 1968 to 1969, and again from 1971 to 1973. Gordon Sherman, who founded Somerset, personally handled all product ordering from 1966 through 1979. According to Sherman, "[t]hroughout the time" that he was at Somerset, he ordered supplies and materials from Albina, including "asbestos tape, asbestos paper, flex connectors[1] and metalbestos pipe."

---

[1] In his deposition testimony, Austin described a flex connector as follows:

Some of the flex connectors that Albina supplied were made by Duro Dyne Corporation and "were made of asbestos cloth with metal strips approximately three inches wide on each side." During the time that Austin worked at Somerset, Sherman also ordered Duro Dyne flex connectors from another supplier, I.M. Distributing Corporation.[2]

As part of his work at Somerset, Austin not only installed flex connectors at various job sites but also, on several occasions, cut flex connectors in Somerset's shop. As Austin indicated, "You cut it off in the shop and fabricate it into the size you want."[3] Although Austin could identify some of those flex connectors as Duro Dyne connectors, he did not know whether they had come from Albina or some other supplier.

Finally, the summary judgment record discloses that plaintiffs retained a "certified asbestos consultant" to provide expert testimony on their behalf. Plaintiffs' counsel submitted an affidavit pursuant to ORCP 47 E averring that that expert would testify that (1) "the use of products known as flex connectors * * * comprised of [sic] asbestos textile material edged with metal strips would constitute an exposure to asbestos when handling, cutting, and installing, and

---

"It consists of a three-inch band of metal, a three-inch band of fabric and a three-inch band of metal. And it comes in a big roll and you fabricate it. You cut it off in the shop and fabricate it into the size you want."

[2] Sherman's affidavit, which plaintiffs submitted in opposing summary judgment, describes I.M. Distributing Corporation as Somerset's "biggest supplier" of supplies and materials generally. However, neither the affidavit nor any other evidence in the record describes the relative number of flex connectors that Somerset purchased from Albina and I.M. Distributing Corporation, respectively.

[3] During his deposition, Austin gave the following testimony:

"Q. [By Albina's counsel] Did you actually install any [Duro Dyne] flex connector[s] while you were at Somerset, personally install it?

"A. Yes.

"Q. And did you ever personally cut any of this flex connector while you were at Somerset?

"A. On a number of occasions, yes.

"Q. Can you give me an estimate of how many occasions?

"A. Probably three or four occasions.

"Q. Three or four occasions you actually cut it?

"A. Yeah."

upon disturbing the product after installation"; and (2) "[t]he use, removal and replacement of asbestos-containing products [including flex connectors] would release asbestos into the air throughout the workplace."[4]

In May 2001, plaintiffs brought this action against Albina and various other manufacturers and suppliers of asbestos-bearing products, alleging that, as a result of exposure to those products, Richard Austin had developed "asbestos-related injur[ies] and/or disease."[5] Albina moved for summary judgment, arguing that plaintiffs could not proffer evidence that would permit a jury to infer, without impermissible speculation, that Austin had been injuriously exposed to any product that Albina had supplied. Plaintiffs countered that the evidence was sufficient to establish injurious exposure to products supplied by Albina, including Duro Dyne flex connectors. The trial court, without amplification, granted summary judgment.

■    On appeal, the parties reiterate the arguments they made to the trial court. In particular, with respect to potential exposure from working with Duro Dyne flex connectors, Albina emphasizes that Austin could not state whether the flex connectors that he handled, cut, and installed had been supplied by Albina or by I.M. Distributing Corporation. Thus, Albina reasons, any determination that those products were supplied by Albina—and any attribution of liability based on such a determination—would necessarily be the product of impermissible speculation.

Albina's argument misses the mark. Regardless of whether plaintiffs can establish that Austin *personally* handled Albina-supplied flex connectors, plaintiffs would nevertheless be entitled to prevail if a trier of fact could reasonably find that Austin was injuriously exposed in the workplace to asbestos fibers as a result of other employees' handling of Albina-supplied flex connectors. Viewed most favorably to

---

[4] Plaintiffs also proffered evidence pertaining to Austin's alleged injurious exposure to asbestos tape and asbestos-bearing components of furnaces supplied by Albina. Given our analysis and disposition, we do not describe that evidence.

[5] Plaintiff Colleen Austin sought damages for loss of consortium.

plaintiffs, the facts adduced on the summary judgment record would permit a finder of fact to reasonably make such a finding.

In particular, from plaintiffs' evidence, a trier of fact could reasonably find the following: (1) Albina (as well as one other supplier) supplied flex connectors to Somerset that Somerset used during Austin's period of employment. (2) Somerset's employees, including Austin, cut the flex connectors "at the shop" where Austin sometimes worked. (3) The cutting of asbestos-bearing flex connectors would release asbestos fibers into the air "throughout the workplace." From those facts, the trier of fact could reasonably infer that flex connectors supplied by Albina were probably cut at Somerset's shop in Austin's presence. Thus, regardless of whether Austin himself actually cut flex connectors supplied by Albina (as opposed to those sold by I.M. Distributing Corporation), a trier of fact could reasonably determine that it was probable that, at some time during his employment, Austin was injuriously exposed to asbestos fibers from his coworkers' handling and cutting of Albina's flex connectors while he was present at Somerset's shop. Those facts are sufficient to establish liability. *See Purcell v. Asbestos Corp., Ltd.*, 153 Or App 415, 423, 959 P2d 89 (1998) (under Oregon law, once it is established that asbestos was present in the workplace, " 'it is the jury's task to determine if the presence of that asbestos played a role in the occurrence of the plaintiff's injuries' " (quoting *Ingram v. ACandS, Inc.*, 977 F2d 1332, 1343-44 (9th Cir 1992))).

The trial erred in granting summary judgment.[6]

Reversed and remanded.

---

[6] Because we hold that plaintiffs' evidence with respect to Austin's exposure to asbestos from the flex connectors was sufficient to establish a probability of exposure—"the matter that is the subject of the motion for summary judgment," ORCP 47 C—we do not offer any opinion as to the sufficiency of plaintiffs' proof of exposure from other sources, much less purport to foreclose plaintiffs from presenting proof of exposure from those sources at trial.