246 P.3d 483 (2010)
240 Or. App. 137
Linda GRIFFIN, Personal Representative of the Estate of Craig Steadman; and Cindy Steadman, Plaintiffs-Appellants,
v.
ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST, et al., and Allis-Chalmers Corporation Product Liability Trust, a Delaware corporation, individually and as successor-in-interest to A-C Pump, Defendants, and
Union Carbide Corporation, a New York corporation, fka Union Carbide and Carbon Products, fka Union Carbide Chemicals and Plastics Company, Inc., individually and as successor-in-interest to Linde Air Products Company, Defendant-Respondent.
070506242; A138278.
Court of Appeals of Oregon.
Argued and Submitted August 2, 2010.
Decided December 29, 2010.
Richard M. Grant argued the cause for appellants. On the briefs were Patrick Angel and Brayton Purcell, LLP.
Julia E. Markley, Portland, argued the cause for respondent. With her on the brief were James H. Gidley and Perkins Coie LLP; and Elizabeth P. Martin and Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, LLP.
Before SCHUMAN, Presiding Judge, and ARMSTRONG, Judge, and ROSENBLUM, Judge.
SCHUMAN, P.J.
Plaintiff brought a products liability and negligence action against 52 defendants, claiming that, as suppliers or producers of raw asbestos or asbestos-containing products to which he was exposed, defendants were responsible for his development of mesothelioma.[1] *484 This appeal involves one of those defendants, Union Carbide Corporation (Union Carbide). Plaintiff alleged that Union Carbide supplied raw asbestos to U.S. Gypsum (USG) at USG's manufacturing plant in Southgate, California (Southgate), and that plaintiff, a truck driver, was exposed to the asbestos when he was at the facility to load finished products. Plaintiff's theory was that the raw asbestos fibers were released into the air during the manufacturing process and that he inhaled enough of them to cause his disease. Union Carbide moved for summary judgment on the ground that plaintiff did not present evidence from which a reasonable juror could infer that asbestos fibers supplied by Union Carbide were present in the USG facility on any of the occasions when plaintiff was there and that, in any event, Union Carbide could not be liable for damage caused by its asbestos because it was raw material incorporated by USG into a finished product. The trial court granted Union Carbide's motion without explanation. Plaintiff appeals. We reverse and remand.
Summary judgment is proper if the "pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact." ORCP 47 C. No triable issue of fact exists if, "based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." Id. On review, we therefore state the facts in the light most favorable to the nonmoving party-here, plaintiff-and draw all reasonable inferences in plaintiff's favor. Jones v. General Motors Corp., 325 Or. 404, 408, 939 P.2d 608 (1997).
Plaintiff worked as a long-haul truck driver from 1972 to 1983. Between 1972 and 1980, plaintiff made 15 to 20 trips to Southgate, two to four visits per year, to load finished products onto his flat-bed truck and deliver them nationwide. Plaintiff does not allege, nor would the evidence support the allegation, that he either delivered asbestos fibers from Union Carbide to the USG facility or loaded finished products that contained Union Carbide asbestos. There is evidence, however, that USG regularly received deliveries of raw asbestos fibers for use in its manufacturing processes; that, during 1972 and 1973, Southgate received over two million pounds of asbestos from Union Carbide, delivered in 44 shipments at approximately two-week intervals; that, during the same two-year period, plaintiff was present in the Southgate facility between four and eight times; that, during his visits, he stood inside the facility in a "loading area" that was not separated from the manufacturing area by any wall or other partition; that, from the loading area where he stood, plaintiff could see the manufacturing area; that, while present in the facility, he used an air hose to clean "dust" from his truck; and that the air in the plant was dusty.
After considerable discovery, Union Carbide moved for summary judgment. In response, and in addition to the evidence set out above, plaintiff's attorney submitted an ORCP 47 E affidavit[2] averring that he had
"retained unnamed expert witnesses who are qualified, willing and available to testify that (a) [plaintiff's] work as a truck driver at U.S. Gypsum's Southgate, California plant and his presence in proximity to others working at the Southgate plant, caused respirable asbestos fibers supplied by Union Carbide to be released into the air that he was breathing, and (b) [plaintiff's] exposures to Union Carbide's asbestos *485 product was a substantial factor in causing his mesothelioma."
Union Carbide contended nonetheless that plaintiff failed to establish a causal connection between his exposure to asbestos and Union Carbide asbestos fibers. In the alternative, Union Carbide argued that it cannot be held liable for plaintiff's injurious asbestos exposure under the "raw material supplier" doctrine. According to Union Carbide, that doctrine, adopted by this court in Hoyt v. Vitek, Inc., 134 Or.App. 271, 894 P.2d 1225 (1995), immunizes Union Carbide, as a supplier of raw material, from any injuries sustained by plaintiff because, once the fibers were incorporated into a finished product manufactured by USG, Union Carbide owed no duty to warn plaintiff of any dangers related to the raw asbestos. The trial court took the parties' arguments and submissions under advisement and subsequently, without explanation, granted Union Carbide's motion. Plaintiff's appeal followed.
To survive a motion for summary judgment in a products liability and negligence case involving asbestos, a plaintiff needs to establish the presence of the defendant's asbestos in the plaintiff's workplace; that fact is sufficient to create a jury question as to whether "`the presence of that asbestos played a role in the occurrence of the plaintiff's injuries.'" Purcell v. Asbestos Corp., Ltd., 153 Or.App. 415, 423, 959 P.2d 89, adh'd to as modified on recons., 155 Or.App. 1, 963 P.2d 729 (1998), rev. den., 329 Or. 438, 994 P.2d 126 (1999) (quoting Ingram v. ACandS, Inc., 977 F.2d 1332, 1344 (9th Cir.1992)). We applied that standard in Austin v. A.J. Zinda Co., 196 Or.App. 262, 101 P.3d 819 (2004), rev. den., 338 Or. 374, 110 P.3d 113 (2005), and plaintiff contends that the present case merits the same outcome.
Austin was the plaintiff's appeal from an adverse summary judgment "on claims arising out of [the plaintiff's] alleged exposure to asbestos-containing products that [the defendant] distributed." Id. at 268, 101 P.3d 819. The plaintiff argued that the record presented genuine issues of material fact as to whether the plaintiff was injuriously exposed to asbestos in various products that the defendant sold or distributed to the plaintiff's former employer. Id. In addition to evidence derived from depositions and affidavits of the plaintiff and other employees at the plaintiff's workplace, the plaintiff's attorney submitted an ORCP 47 E affidavit averring that
"(1) the use of products known as flex connectors * * * comprised of [sic] asbestos textile material edged with metal strips would constitute an exposure to asbestos when handling, cutting, and installing, and upon disturbing the product after installation; and (2)[t]he use, removal and replacement of asbestos-containing products [including flex connectors] would release asbestos into the air throughout the workplace."
Id. at 269-70, 101 P.3d 819 (internal quotation marks omitted; alterations in Austin).
The defendant asserted that the "plaintiff[] could not proffer evidence that would permit a jury to infer, without impermissible speculation, that [the plaintiff] had been injuriously exposed to any product that [the defendant] had supplied." Id. at 270, 101 P.3d 819. The defendant emphasized that the plaintiff "could not state whether the flex connectors that he handled, cut, and installed had been supplied by [the defendant] or [another distributing company]." Id. We reversed and remanded, explaining:
"[The defendant's] argument misses the mark. Regardless of whether [the plaintiff] can establish that [he] personally handled [defendant]-supplied flex connectors, [the plaintiff] would nevertheless be entitled to prevail if a trier of fact could reasonably find that [the plaintiff] was injuriously exposed in the workplace to asbestos fibers as a result of other employees' handling of [defendant]-supplied flex connectors. Viewed most favorably to [the plaintiff], the facts adduced on the summary judgment record would permit a finder of fact to reasonably make such a finding."
Id. at 270-71, 101 P.3d 819 (emphasis in original).
The similarities between this case and Austin are obvious: a worker's appeal involving asbestos in the workplace; testimony supplemented by an ORCP 47 E affidavit averring that the plaintiff was exposed to *486 asbestos by his exposure to other employees who had been in contact with raw asbestos; and the defendant's argument that the record did not create an issue of fact as to causation. There is one other similarity as well: Here, too, most of Union Carbide's arguments miss the mark. That is so because Union Carbide for the most part treats plaintiff's claim as though it were based on allegations of injurious exposure to Union Carbide-supplied asbestos contained in products manufactured at Southgate. In fact, plaintiff's theory is that his work at Southgate caused him to be exposed to the raw asbestos fibers that Union Carbide delivered to Southgate, which were respirable in the plant as a result of the manufacturing process that took place there. Thus, it is of no import whatsoever that, as Union Carbide argues, it was not the only supplier of asbestos to USG; that USG made products that did not contain asbestos, as well as products that did; that the asbestos-containing products were "pre-palletized and covered with plastic" before plaintiff loaded them; or that plaintiff may never have hauled Union Carbide asbestos-containing products out of Southgate. None of these assertions addresses the question on review: whether the record contains evidence that there were asbestos fibers supplied by Union Carbide in the air at Southgate at some time when plaintiff was present.
Insofar as defendant's argument addresses that question, its position is that plaintiff's proffered connection between his exposure to asbestos and Union Carbide's deliveries of asbestos involves a "quantum leap" in reasoning and, thus, requires speculation. According to defendant, plaintiff failed to present evidence to support even an inference that plaintiff's limited visits to Southgate's loading area coincided with the presence of raw asbestos supplied by Union Carbide. We disagree. It is undisputed that, for at least two years during which plaintiff was a regular, if infrequent, visitor to Southgate, USG there received on a regular basis large quantities of asbestos from Union Carbide for use in manufacturing products. It is also undisputed that plaintiff spent time inside the facility, that there was no physical separation between where he was located and the manufacturing area, that the air in the plant was dusty, and that plaintiff used an air hose to clean dust and debris from the loaded products. Although those facts alone might leave a gap that would require speculation to fill, the facts were supplemented by expert testimony, promised in the ORCP 47 E affidavit, that plaintiff's work at Southgate "and his presence in proximity to others working at the Southgate plant, caused respirable asbestos fibers supplied by Union Carbide to be released into the air that he was breathing." Reviewing all of the evidence, as well as reasonable inferences that could be drawn from it, in a manner most favorable to plaintiff, we conclude that a trier of fact could reasonably infer that, because of plaintiff's work at Southgate, he inhaled asbestos fibers supplied by Union Carbide. See Austin, 196 Or.App. at 271, 101 P.3d 819 (reaching the same conclusion).
In an alternative argument, Union Carbide alleges that it is immune from liability as a supplier of raw asbestos to USG, a sophisticated manufacturer, under the "raw material supplier" doctrine. Hoyt, 134 Or. App. at 282-86, 894 P.2d 1225. In that case, the plaintiff brought an action against du Pont "for damages allegedly caused by the use of Teflon, which was manufactured and sold by du Pont, in a temporomandibular joint implant designed, manufactured and marketed by Vitek." Id. at 274, 101 P.3d 819. We characterized the question presented by the case to be "whether strict liability should be extended to the supplier of a component part that was misapplied rather than defectively designed." Id. at 286, 101 P.3d 819. We held that the supplier could not be liable. As developed by Oregon courts, that doctrine does not extend to cases like this one, where the plaintiff alleges injurious exposure to a raw material and not to a finished product containing the raw material as a component part. Id. at 284-86, 101 P.3d 819.
Despite Hoyt's limited applicability, defendant urges us to adopt the Fifth Circuit's reasoning in Cimino v. Raymark Industries, Inc., 151 F.3d 297, 331-35 (5th Cir.1998), where the court applied the raw material supplier doctrine to preclude liability of a *487 supplier of raw asbestos. That case does not lend itself to easy import, because of two key distinctions: (1) In Cimino, the plaintiff alleged exposure to asbestos from a finished product (insulation), and (2) the federal district court made findings that the defendant-supplier's asbestos fiber was not a health hazard in its raw form. Id. at 331. The record in this case is different; importantly, plaintiff alleges that he was exposed to raw asbestos fibers at a manufacturing plant, not from exposure to asbestos-containing finished products, and plaintiff has retained an expert who was prepared to testify that the raw asbestos fibers that Union Carbide supplied were hazardous to plaintiff's health. We decline to extend the raw material supplier doctrine articulated in Hoyt to immunize Union Carbide from potential liability.
Reversed and remanded.
NOTES
[1] Craig Steadman and his wife jointly filed the initial complaint in this action. Mr. Steadman died of mesothelioma in June 2008, and Linda Griffin now represents his interests as personal representative of his estate. In the opinion, "plaintiff" refers to Craig Steadman.
[2] ORCP 47 E provides, in part:

"If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit or a declaration of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion."