Argued and submitted May 7, 2019, affirmed March 24, petition for review denied July 29, 2021 (368 Or 510)

Marilee M. LAUX,
individually and as Personal Representative of
the Estate of Ronald K. Laux,
*Plaintiff-Appellant,*

*v.*

AKEBONO BRAKE CORPORATION et al,
*Defendants,*

*and*

YAMAHA MOTOR COMPANY LTD
and Yamaha Motor Corporation, U.S.A.,
*Defendants-Respondents.*

Multnomah County Circuit Court
140405683; A164168

484 P3d 329

Plaintiff appeals from a limited judgment for defendant, challenging the trial court's grant of summary judgment in defendant Yamaha's favor on claims arising from decedent Ronald Laux's alleged exposure to asbestos in motorcycle brake-friction materials. The trial court granted defendant's motion for summary judgment, concluding that there was insufficient evidence that decedent was exposed to Yamaha asbestos. On appeal, plaintiff argues that a statement made by defendant's corporate representative in which he explained that "asbestos-free friction materials began to surface in the market sometime in the 1970s," allows a factfinder to infer that Yamaha's brake-friction materials contained asbestos during the relevant time period. *Held*: The Court of Appeals concluded that, even after drawing all objectively reasonable inferences in the light most favorable to plaintiff, there was insufficient evidence to create a genuine issue of material fact that decedent was exposed to asbestos from Yamaha brake-friction materials.

Affirmed.

Kelly Skye, Judge.

James S. Coon argued the cause for appellant. Also on the briefs was Thomas, Coon, Newton and Frost.

Dean E. Aldrich argued the cause for respondents. Also on the brief was Aldrich Eike, P. C.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.*

POWERS, J.

Affirmed.

Shorr, J., dissenting.

---------------

* Shorr, J., *vice* Linder, S. J.

POWERS, J.

In this civil case, plaintiff appeals from a limited judgment for defendant, challenging the trial court's grant of summary judgment in defendant's favor on claims arising from decedent Ronald Laux's alleged exposure to asbestos in motorcycle brake-friction materials.[1] In her first amended complaint, plaintiff brought negligence and strict-products-liability claims against numerous defendants alleged to be suppliers or manufacturers of asbestos-containing materials, including Yamaha Motor Company, Ltd. and Yamaha Motor Corporation, U.S.A. (collectively "Yamaha"), the only defendant that is a party to this appeal.[2] The trial court granted defendant's motion for summary judgment, concluding that there was insufficient evidence that decedent was exposed to Yamaha asbestos. We affirm.

Summary judgment is proper where "the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact." ORCP 47 C. No genuine issue of material fact exists if, "based on the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party." *Id*. Given that standard, we describe the evidence in the light most favorable to plaintiff, the nonmoving party, and draw all objectively reasonable inferences in her favor. *Greer v. ACE Hardware Corp.*, 256 Or App 132, 134, 300 P3d 202 (2013).

Decedent jointly owned and worked at Fred's Honda, a motorcycle shop in Corvallis, Oregon, from 1961 to 2014. In 2014, he was diagnosed with mesothelioma, which plaintiff asserted was caused by exposure to asbestos in brakes and other motorcycle parts during decedent's

---

[1] Ronald Laux died shortly after he and his wife, Marilee Laux, initiated this action. After decedent's death, his wife was appointed personal representative of decedent's estate; thus, we refer to her as plaintiff, even though she brings claims on behalf of herself and in her capacity as the estate's representative. We refer to Ronald Laux as decedent.

[2] For convenience, we use the terms "Yamaha" and "defendant" interchangeably to refer jointly to Yamaha Motor Company, Ltd. and Yamaha Motor Corporation, U.S.A.

tenure at Fred's Honda. Specifically, plaintiff alleged that replacing brake linings in motorcycles created airborne asbestos dust that mechanics like decedent would breathe when they removed old brakes and when they abraded new brakes. In a deposition, decedent's business partner Fred Watkins, averred that two to four brake jobs were performed a day at Fred's Honda during the 1960s and five to six brake jobs a day during the 1970s. During the relevant time period, Watkins further averred that about 10 percent of the motorcycles serviced at Fred's Honda were Yamaha motorcycles.

After the parties engaged in discovery, defendant moved for summary judgment. Defendant argued that plaintiff lacked sufficient evidence to support a claim that decedent was exposed to an asbestos-containing product manufactured, distributed, or supplied by defendant. In support of its motion, defendant quoted excerpts from decedent's deposition in which decedent testified that he could not recall doing any repair work on Yamahas and that he "wasn't involved in that brand." Further, defendant argued that Yamaha motorcycles were only a small percentage of the motorcycles serviced at Fred's Honda and that the majority of Yamaha repair work was done at a different store location where decedent did not work. Finally, defendant asserted that there was no evidence that Fred's Honda obtained its brake products from authorized Yamaha dealerships or that defendant supplied products containing asbestos.

Plaintiff remonstrated that, although decedent could not recall a specific incident where he worked on a Yamaha motorcycle in his deposition, decedent and Watkins testified that they worked on several types of motorcycles at Fred's Honda, including Yamahas; therefore, it was likely that decedent "worked on Yamahas over his extended career." Regardless, plaintiff argued that, decedent's son, who also worked at Fred's Honda, testified that decedent walked through the shop regularly and breathed in brake dust whenever other mechanics were working. Additionally, plaintiff provided excerpts from the deposition of Caleb Chesser, defendant's corporate representative, in which Chesser noted that he could not confirm whether there were

any Yamaha models that had asbestos-free brakes before 1990.[3]

The trial court granted defendant's motion:

"Having considered the oral arguments and written submissions of the parties, this Court finds that Plaintiff has not established the requisite product identification, and that Defendants Yamaha Motor Co., Ltd. and Yamaha Motor Corporation, U.S.A. are entitled to prevail as a matter of law. Plaintiff presented sufficient evidence from which an inference can be drawn that Fred's Honda serviced Yamaha motorcycles while Ronald Laux was employed there. However, Plaintiff has not presented admissible evidence from which an inference can be drawn that the specific Yamaha motorcycles serviced at Fred's Honda were equipped with asbestos-containing brakes. Thus, Defendants Yamaha Motor Co., Ltd. and Yamaha Motor Corporation, U.S.A.'s Motion for Summary Judgment is hereby GRANTED."

The trial court entered a limited judgment in favor of defendant, and plaintiff subsequently filed this appeal from that limited judgment.

On appeal, plaintiff contends that the trial court erred in granting summary judgment to defendant, arguing that the court erred in determining that she failed to present "evidence from which an inference can be drawn that the specific Yamaha motorcycles serviced at Fred's Honda were equipped with asbestos-containing brakes." Plaintiff asserts that, to defeat defendant's summary judgment motion, she was not required to show that all of the Yamaha motorcycles repaired at Fred's Honda had asbestos brake linings; rather, under *Griffin v. Allis-Chalmers Corp. Product Liability Trust*, 240 Or App 137, 142, 246 P3d 483 (2010), she needed to show only the presence of Yamaha asbestos in decedent's workplace. In support of her claim that Yamaha brake-friction materials contained asbestos during the relevant time period, plaintiff relies on inferences drawn from

---

[3] Plaintiff also argued that another defendant named in the complaint supplied Yamaha with brakes containing asbestos during the relevant time period, which plaintiff alleged she could connect to specific Yamaha models worked on at Fred's Honda. Plaintiff, however, has not renewed that argument on appeal and, therefore, we do not consider it.

an excerpt of Chesser's deposition in which he explained that "asbestos-free friction materials began to surface in the market sometime in the 1970s." That statement, according to plaintiff, allows a factfinder to "infer that Yamaha brake linings contained asbestos until at least the 1970s."[4]

In response, defendant argues that the trial court properly granted summary judgment because "a juror could not conclude—without impermissible speculation—that all Yamaha motorcycle products serviced at [decedent's] workplace contained asbestos." Defendant asserts that, under *Greer*, because plaintiff did not identify a specific Yamaha motorcycle brake product that contained asbestos, plaintiff was required to prove that during the timeframe that plaintiff was exposed to Yamaha motorcycle brake products "all Yamaha motorcycle brake products contained asbestos." (Emphasis omitted.) Responding to plaintiff's reliance on Chesser's statement, defendant contends that "Mr. Chesser's one line cannot support an inference that all, or even some, Yamaha motorcycle brake products contained asbestos before the referenced time in the 1970s." Defendant argues that, because "Chesser did not testify that any brake product prior to the 1970s actually contained asbestos, nor was Mr. Chesser able to provide any information about which motorcycles might have had brake products from any given third-party vendor," plaintiff cannot rely on his statement to create a genuine issue of material fact without relying on impermissible speculation. Accordingly, defendant argues that plaintiff "presume[s] the existence of asbestos in all brakes," but has "provided no evidence regarding the composition of Yamaha motorcycle brakes during the 1960s."

---

[4] Although plaintiff cited and quoted other portions of Chesser's deposition in her response to defendant's motion for summary judgment, she did not specifically quote the statement that she now relies on to argue that an objectively reasonable factfinder could infer that Yamaha brake linings contained asbestos until the 1970s. In a footnote in its answering brief, defendant notes that plaintiff did not raise that specific argument before the trial court but does not otherwise assert that plaintiff's argument is unpreserved. Because both parties raised, and the trial court considered, during the summary judgment proceedings the portion of Chesser's deposition that is now at issue on appeal, we do not have independent preservation concerns. *See Vokoun v. City of Lake Oswego*, 189 Or App 499, 508, 76 P3d 677 (2003), *rev den*, 336 Or 406 (2004) (noting that we have an "independent obligation to determine whether an argument advanced on appeal was preserved").

In her reply brief, plaintiff elaborates on why Chesser's statement regarding the existence of "asbestos-free friction materials" is sufficient to raise a genuine issue of material fact:

> "A reasonable juror could find that defendant's witness, Mr. Chesser, in making the statement that 'asbestos-free friction materials began to surface in the market sometime in the 1970s,' meant that, before sometime in the 1970s, all motorcycle brake friction materials contained asbestos. As a matter of language and logic, that is what Mr. Chesser's statement means. If friction materials free of asbestos 'began to surface in the market' at a particular time, then, before that time, asbestos-free materials had not yet 'surfaced in the market,' that is there were no asbestos-free materials motorcycle brake friction materials available. That is not only a permissible inference from Mr. Chesser's statement; it is the most logical inference."

(Footnote omitted.)

The legal principles governing this case are well settled. As we have previously explained in *Griffin*, "[t]o survive a motion for summary judgment in a products liability and negligence case involving asbestos, a plaintiff needs to establish the presence of the defendant's asbestos in the plaintiff's workplace[.]" 240 Or App at 142. Once a plaintiff establishes the presence of asbestos, "that fact is sufficient to create a jury question as to whether the presence of that asbestos played a role in the occurrence of the plaintiff's injuries." *Id.* (internal quotation marks omitted). If a "defendant in an asbestos-liability case moves for summary judgment on the ground that the plaintiff cannot establish that he or she was exposed to specific asbestos products for which the defendant is responsible, the plaintiff has the burden of producing product identification evidence in opposition to the summary judgment motion." *Greer*, 256 Or App at 140 (internal quotation marks omitted).

As an initial matter, although decedent did not specifically recall working on Yamaha motorcycles, there is sufficient evidence in the summary judgment record to reasonably infer that Fred's Honda serviced Yamaha motorcycles during decedent's employment. *See Austin v. A. J. Zinda Co.*, 196 Or App 262, 270, 101 P3d 819 (2004), *rev den*, 338 Or 374

(2005) (noting that, regardless of whether the plaintiff could establish that he personally handled the defendant's flex connectors, he "would nevertheless be entitled to prevail [on summary judgment] if a trier of fact could reasonably find that [the plaintiff] was injuriously exposed in the workplace to asbestos fibers as a result of other employees' handling of [the defendant]-supplied flex connectors"). Thus, the question in this case is whether evidence in the summary judgment record would allow an objectively reasonable finder of fact to conclude that Yamaha brake-friction materials contained asbestos during the time decedent worked at Fred's Honda. More specifically, the question presented is whether Chesser's statement that "asbestos-free friction materials began to surface in the market sometime in the 1970s," is sufficient to raise a triable issue of fact as to whether defendant's brake-friction materials contained asbestos during the relevant time period.

We conclude that, even after drawing all objectively reasonable inferences in the light most favorable to plaintiff, Chesser's statement provides insufficient evidence from which a factfinder could reasonably infer that decedent was exposed to asbestos from Yamaha brake-friction materials. Chesser's statement, viewed in the context of his full testimony, is insufficient.

In Chesser's deposition, plaintiff's counsel questioned Chesser about various Yamaha models throughout the years in question and confirmed whether or not Yamaha still had information on those motorcycles:

"Q.   Okay. No information * * * regarding models from the 1960s?

"A.   So regarding models that were made in the 1960s, that's correct. There's—that information doesn't exist anymore at [Yamaha].

"Q.   Okay. Why don't you walk me through then what—with respect to this first page, what—what—what you learned.

"A.   Okay.

"Q.   And I want to make sure I understand it before we kind of move through this.

"A.   So we talked about the 1960s. For the 1970s, there's some information still available, but it's incomplete. It's sort of spotty. But we also know that asbestos-free friction materials began to surface in the market sometime in the 1970s.

"So with—without a document where we can confirm if the friction material had asbestos or not, we can't definitively rule it out. We can't—

"Q.   When you say the 'market,' what do you mean by the 'market'?

"A.   So from my own research, I found in that Phantom Rider catalog that there are asbestos-free friction material that goes back to some '70s models Yamaha.

"* * * * *

"Q.   Okay. And is Phantom Rider—is this a—is there any association between Phantom Rider and any of the Yamaha entities?

"A.   No. No, this is nothing that—this was my own personal research outside of Yamaha.

"* * * * *

"Q.   So * * * is this like a trade publication for the motorcycle industry, basically?

"A.   It's a catalog that was produced to sell aftermarket parts—

"Q.   Okay.

"A.   —for motorcycle riders."

Chesser's statement about asbestos-free friction materials beginning to surface in the market in the 1970s is insufficient to create a genuine issue of fact under the circumstances of this case. As an initial matter, at no point during Chesser's deposition did he directly confirm the presence of asbestos in Yamaha brake-friction materials during the time that decedent worked at Fred's Honda. Instead, plaintiff relies on a series of inferences that may be drawn from Chesser's statement. In that regard, plaintiff's argument relies on two related but distinct inferences: first, all brake-friction materials before the 1970s contained asbestos; and second, all Yamaha brake-friction materials must

have contained asbestos before the 1970s. As explained below, plaintiff's argument necessarily relies on too great of an inferential leap.

Chesser grounded his statement in his observations derived from a motorcycle catalog from 1983—Phantom Rider—with no direct connection to Yamaha. Indeed, Chesser acknowledged that the catalog was produced to sell aftermarket parts for a number of different motorcycle brands, not just Yamaha. Without other evidence to establish the presence of asbestos in Yamaha brake-friction materials, an objectively reasonable juror has no basis, without resorting to impermissible speculation, for inferring that there was asbestos in Yamaha brake-friction materials before the 1970s.[5]

Consistent with our previous asbestos-liability cases, a plaintiff cannot rely on the generalized notion that asbestos is present in the industry to survive summary judgment. On the contrary, in our cases in which the summary judgment record created a genuine issue of material fact, that record contained some evidence of asbestos in the defendant's product. *See, e.g.*, *Austin*, 196 Or App at 269-70 (relying on an affidavit pursuant to ORCP 47 E averring that an expert would testify that the use, removal, and replacement of asbestos-containing products, including the "flex connectors" at issue in the case would release asbestos in the air throughout the workplace); *Abendroth v. Asbestos Corporation, Ltd.*, 201 Or App 705, 712, 120 P3d 535 (2005)

---

[5] After oral arguments in this case, plaintiff filed a supplemental memorandum of additional authorities arguing that

"[a]sbestos has long been, and in some cases still is, a component of motor vehicle brake friction parts. *E.g.*, 29 CFR 1910.100, Appendix F (automotive brake best practices to protect against asbestos exposure). However, because the presence of asbestos in motorcycle and other motor vehicle brake parts is a well-established and presumed fact in asbestos litigation, there is no direct statement in the summary judgment record in this case that 'there was asbestos in motorcycle brake friction parts.'"

As defendant's response to that memorandum observes, plaintiff acknowledges that there is "no direct statement" in the summary judgment record that the brake-friction parts at issue in this case contained asbestos. That is, even if we agreed that there is a history of asbestos being present in brake-friction parts, that generalized history falls short of creating an issue of fact regarding the presence of asbestos in Yamaha brake-friction parts during the period that decedent worked at Fred's Honda.

(reversing the grant of summary judgment where there was a genuine issue of material fact on the question of exposure to asbestos where the plaintiff was exposed to the defendant's taping compounds that the defendant admitted contained asbestos during the relevant time period); *West v. Allied Signal, Inc.*, 200 Or App 182, 191 n 3, 113 P3d 983 (2005) (noting that the vice president and part-time salesperson for the defendant testified in his deposition generally about the defendant's sale of gloves and acknowledged that the defendant sold "asbestos gloves").

For example, in *Perman v. C. H. Murphy/Clark-Ullman, Inc.*, 220 Or App 132, 135, 185 P3d 519 (2008), the defendant moved for summary judgment, contending that the plaintiff had been unable to adduce evidence that the decedent had been exposed to any asbestos-containing products distributed by the defendant. In support of its motion, the defendant submitted a declaration from a former employee denying that the defendant ever sold any gloves, "much less any asbestos-containing gloves" to the plaintiff's employer. *Id.* at 141. Defendant also submitted a declaration from an expert witness, who stated that, based on his research about welding gloves and mittens available to decedent, some of those "contained asbestos" and others included other fabrics like fiberglass and flame-retardant cotton. *Id.* at 136.

In response, the plaintiff submitted excerpts of the decedent's deposition testimony in which the decedent described the type of gloves he used during his employment and that he "believed the material [in the gloves] was asbestos." *Id.* The plaintiff also submitted a declaration from a coworker who stated that "during their employment, he and decedent were required to wear 'asbestos gloves.'" *Id.* The trial court granted the defendant's motion for summary judgment and on appeal we reversed. We held that, even though the defendant proffered evidence that he never sold gloves, decedent's testimony was sufficient to preclude summary judgment. *Id.* at 141. We concluded that the decedent's deposition testimony created a genuine issue of material fact, because the decedent had testified that the defendant supplied "silver gloves," the decedent believed that the "silver gloves" contained asbestos, and the decedent was a

"long-time welder and sheet metal worker, who was familiar with other products containing asbestos." *Id*.

Unlike any of these cases, the summary judgment record in this case does not contain evidence that Yamaha's brake parts contained asbestos. Further, we respectfully disagree with the dissenting opinion's reliance on the negative implications drawn from Chesser's statements that asbestos-free materials "began to surface" in the 1970s and that those materials were "introduced" during that time period. First, as noted earlier, Chesser reached his conclusion based on an aftermarket catalog. Not only was that catalog issued a decade after the time period in question, it was not specific to Yamaha products. Second, his statements are too vague for an objectively reasonable factfinder to reasonably infer—rather than guess or speculate—that Yamaha's brake products contained asbestos. As Chesser explained, he could not provide "absolute confirmation" of asbestos but could not rule it out either. He explained, "So I just don't know one way or the other." Accordingly, because there was insufficient evidence to create a genuine issue of material fact that defendant's brake-friction materials contained asbestos, the trial court correctly granted defendant's motion for summary judgment.

Affirmed.

**SHORR, J.,** dissenting.

I respectfully dissent from the majority opinion. This case presents a close question on whether there is evidence in the record from which a reasonable factfinder could conclude that decedent Ronald Laux was exposed to asbestos from Yamaha motorcycle brake parts over his 50-plus year career working at Fred's Honda from 1961 to 2014. I agree with the majority's recitation of the facts and applicable law. I also agree with the majority's conclusion that a reasonable factfinder could find that Fred's Honda serviced Yamaha motorcycle brake parts during decedent's career at the shop. My only disagreement is with the majority's conclusion that, even when viewing the evidence in the light most favorable to plaintiff (the representative for decedent's estate) and drawing all reasonable inferences in her

favor, a reasonable factfinder could not find that Laux was exposed to asbestos from Yamaha brake-friction materials. I would reach the opposite conclusion and, for that reason, would reverse the trial court's grant of summary judgment to defendants Yamaha Motor Company, Ltd. and Yamaha Motor Corporation, U.S.A. (defendants).

The majority opinion sets forth the relevant facts in the record. I will not repeat or add to them here save one exception. Our disagreement revolves around the deposition testimony of Caleb Chesser, a corporate representative for Yamaha Motor Corporation, U.S.A. As the majority notes, Chesser testified that "[w]e *** know that asbestos-free friction materials began to surface in the market sometime in the 1970s" and that "there [is] asbestos-free friction material that goes back to some '70s models Yamaha." Chesser then testified more on this topic:

"Q. *** For the 1970s, on page 5, there's an indication in your notes [that] asbestos-free friction materials [were] introduced in this time.

"Now, were those just introduced in the general marketplace at this time or is there a specific source of information to indicate that Yamaha introduced asbestos-free friction materials in the 1970s?

"A. Well, I researched by models. I don't know if—if Nori could point to a specific model in the '70s that didn't have asbestos. But, again, we know that it existed or it—it began to be sold—

"Q. Okay.

"A. —in that time frame, and so he couldn't—he couldn't rule it out that the possibility is there that it could be asbestos-free."

Chesser was later presented with the names of certain Yamaha models and testified as follows:

"Q. For all of these models, is there anything prior to 1990 in writing confirming an asbestos—an asbestos-free brake on a Yamaha motorcycle?

"A. Before 1990?

"Q. Correct.

"A. I don't believe so."

There is an entirely reasonable, nonspeculative inference that can be drawn from Chesser's testimony that asbestos-free brake materials "began to surface" in the 1970s and that those materials were "introduced" during that time period. *See State v. Hedgpeth*, 365 Or 724, 732, 452 P3d 948 (2019) (stating in a different context involving a criminal defendant's motion for judgment of acquittal that facts may be established based on reasonable inference but not impermissible speculation). That inference is that it was the standard at Yamaha and throughout the industry for brake-friction materials *to* contain asbestos before the introduction of asbestos-free brake materials beginning in the 1970s and going forward. A factfinder might not draw that inference or find for plaintiff on that issue, but it would be reasonable on this record for the factfinder to do so.

This is a case where there perhaps could have been a better summary judgment record with more direct evidence regarding the presence of asbestos in Yamaha brake parts during the relevant time frame. However, because a factfinder could still draw a reasonable inference regarding the presence of asbestos in Yamaha brake parts during that time, I respectfully dissent from the majority and would reverse the trial court's grant of summary judgment to defendants.